**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

DELTA & PINE LAND COMPANY, ET AL.                              PLAINTIFFS

VS.                                        CIVIL ACTION NO. 3:03-CV-21 WS

NATIONWIDE AGRIBUSINESS INSURANCE
COMPANY, NATIONWIDE MUTUAL INSURANCE
COMPANY                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the court are the opposing motions for summary judgment submitted by

the parties in the above styled and numbered cause pursuant to Rule 56(a) and (b)[1] of

the Federal Rules of Civil Procedure.  This lawsuit  was filed by Delta & Pine Land

Company ("Delta & Pine Land") as a declaratory judgment action pursuant to

Mississippi Rule of Civil Procedure 57[2] in the Circuit Court of Holmes County,

Mississippi, against the defendants Nationwide Agribusiness Insurance Company,

Nationwide Mutual Insurance Company (referred to as the "Nationwide defendants" or

---

[1]Federal Rule of Civil Procedure 56(a) provides that, "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.   Rule 56(b) provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[2]Mississippi Rule of Civil Procedure 57(b)(1) states in pertinent part: "Any person interested under a . . . written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status or other legal relations thereunder."

the "defendants")[3] and fifty-six (56) cotton farmers[4] (the "Farmer Plaintiffs") who filed a

lawsuit against Delta & Pine Land in the Circuit Court of Holmes County, Mississippi

(the "underlying action").  The Nationwide defendants removed Delta & Pine Land's

declaratory judgment action to this court, contending that the case was removable

under Title 28 U.S.C. § 1441[5], and that this court's jurisdiction was based on diversity

of citizenship under § 1332[6].  Delta & Pine Land sought to remand the case pursuant

to Title 28 U.S.C. § 1447[7].  In a separate Memorandum Opinion and Order, this court

denied the motion to remand.

Now, the parties ask this court to determine as a matter of law whether the

claims asserted by the Farmer Plaintiffs in their first amended complaint filed in

underlying action are covered under the Nationwide defendants' policies.  After

---

[3]Delta & Pine Land obtained insurance against third-party liability claims in 1999 through Nationwide Agribusiness, policy No. CPP 0000215 04 ("general liability policy"), issued on May 31, 1998, and Nationwide Mutual Insurance Company ("Nationwide Mutual") policy No. CUL 0000218 04 ("umbrella policy"), issued on May 31, 1998.

[4]The lawsuit in state court now has been severed and the are several now actions pending.

[5]Title 1441(a) provides that, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

[6]Title 28 U.S.C. § 1332(a)(1) provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

[7]Title 28 U.S.C. § 1447(c) provides that, "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case."

thorough review of the submissions of the parties, including the briefs, the affidavits and the insurance polices in question, this court finds that they are not.

## PERTINENT FACTS

In the underlying action, the Farmer Plaintiffs alleged in their first amended complaint that they had purchased a particular cotton seed called "NuCotn 33B" which had been developed by Delta & Pine Land for the 1999 growing season. The Farmer Plaintiffs planted the seed and, according to their lawsuit, observed a disappointing crop, notwithstanding that the seed germinated and produced a cotton crop for the 1999 season. The Farmer Plaintiffs contended in the underlying action that the low yield occurred because the NuCotn 33B seed mixture they had purchased from Delta & Pine Land was defective.

The Farmer Plaintiffs asserted more, contending that Delta & Pine Land had pursued a course of conduct intentionally designed to remain financially attractive in 1999 in anticipation of a pending merger with the Monsanto corporation. The need for this course of conduct, say the Farmer Plaintiffs, arose when Delta & Pine Land discovered that it had failed to predict the demand for its NuCotn 33B seed for the 1999 growing season. Without sufficient inventories of quality NuCotn 33B seed for sale for the 1999 growing season, Delta & Pine Land began blending the NuCotn 33B seed with inferior seed, resulting in a less vigorous product and a much lower cotton yield in 1999. This unanticipated poor yield, says the Farmer Plaintiffs, was the proximate cause of extensive monetary damages and emotional distress.

Resultedly, the Farmer Plaintiffs sued. In that underlying action, they alleged breach of the implied warranty of merchantability, breach of the implied warranty of

3

fitness for a particular purpose, breach of express warranty, negligence, gross negligence, fraud, intentional interference with prospective economic opportunities, and tortious interference with business relationships.

Delta & Pine Land called upon the Nationwide defendants to provide a defense in accordance with the terms of the two insurance policies in question.  When the Nationwide defendants refused to defend and indemnify, Delta & Pine Land brought this lawsuit as a declaratory judgment action in state court.   Nationwide successfully removed the lawsuit to this court and moved for summary judgment based on the contention that the Farmer Plaintiffs in the underlying action had asserted in their first amended complaint only claims for intentional conduct, claims which did not give rise to coverage under the policies in question for bodily injury or for property damage.

The Nationwide defendants also argued that the Farmer Plaintiffs' claims of intentional conduct by Delta & Pine Land failed to assert an "occurrence" as that term is defined by the two policies in question.  While the Nationwide defendants undertook Delta & Pine Land's defense in the Farmer Plaintiffs' underlying state court case under a reservation of rights, they denied any and all liability for indemnification under either of the policies in question.

The parties now agree that Delta & Pine Land is not seeking indemnification for bodily injury.  Furthermore, after another amended complaint was filed in the underlying state court action, the occurrence issue no longer required resolution by this court.  There remains the matter of whether property damage as defined by the policies in question had occurred, property damage which would trigger coverage and require the Nationwide defendants to indemnify Delta & Pine Land in the event any

4

liability was imposed it in state court.  Therefore, the primary and most relevant consideration now before this court is whether property damage has occurred.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);  *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Electrical Industries Company v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 254-55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine

fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). Likewise, hearsay evidence, unless it falls within a recognized exception, is not competent summary judgment evidence.  *See Fowler v. Smith,* 68 F.3d 124, 126 (5th Cir. 1995).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*;  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548.

6

## MISSISSIPPI LAW GOVERNS THIS COURT'S ANALYSIS

This court, sitting in diversity, is required to apply Mississippi substantive law to the issues raised by parties in this case. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). "The core of what has become known as the 'Erie Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law. *Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). When deciding an unsettled issue of state law , this court must predict (perform an "Erie-guess") how the Mississippi Supreme Court has, or would, interpret the question before the court. *Batts v. Tow-Motor Forklift Company*, 978 F.2d 1386, 1389 (5th Cir.1992).

"Mississippi has adopted the 'allegations of the complaint' rule (sometimes referred to as the eight-corners test) to determine whether an insurer has a duty to defend," pursuant to which the court reviews the allegations in the underlying complaint to see whether it states a claim that is within or arguably within the scope of the coverage provided by the insurance policy. *Ingalls Shipbuilding v. Federal Insurance Company*, 410 F.3d 214, 225 (5th Cir. 2005). Consequently, this court must compare the words of the complaint with the words of the policy, looking "not to the particular legal theories" pursued by the plaintiffs, "but to the allegedly tortious conduct underlying" the suit. *Id.* So, whether a liability insurance company has a duty to defend or to indemnify an insured depends upon the language of the policy and by

the allegations of the complaint or declaration in the underlying action.  *See Sennett v. U.S. F.& G.,* 757 So.2d 206, 212 (Miss. 2000) (finding no duty to defend or to indemnify).

Under Mississippi law, interpretation of the insurance policy's language is a question of law, not one of fact." *Noxubee County School District v. United National Insurance Company*, 883 So.2d 1159, 1165 (Miss. 2004);  *Johnson v. Preferred Risk Automobile Insurance Company*, 659 So.2d 866, 871 (Miss. 1995).  Mississippi insurance law is clear.  An  insurance policy that is plain and unambiguous will be construed exactly as written. *Id*.  Any ambiguities in the insurance contract will be construed against the drafter and in favor of the insured.  *Centennial Insurance Company v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382-83 (5th Cir. 1998);  *Harrison v. Allstate Insurance Company*, 662 So.2d 1092, 1094 (Miss. 1995).  When an insurance policy has two equally reasonable interpretations, Mississippi law requires this court to adopt the interpretation giving greater indemnity to the insured.  *Caldwell v. Hartford Accident & Indemnity Company*, 248 So.2d 209, 213 (Miss. 1964).  The terms of the insurance policies in the case, particularly any exclusion clauses, will be construed against the insurer and in favor of coverage.  *Harrison v. Allstate Insurance Company*, 662 So.2d 1092, 1094 (Miss. 1995); *State Farm Mutual Auto Insurance Company v. Scitzs*, 395 So.2d 1371, 1373 (Miss. 1981).

## ANALYSIS

### A. The Matter of Property Damage

8

Property damage is defined by the general liability policy as, "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time the physical injury that caused it;  or b. Loss of use of tangible property that is not physically injured."[8]

The Nationwide defendants say that the general liability policy contemplates physical injury.  There must exist, say defendants, some physical injury to tangible property or some loss of use to tangible property not physically injured for property damage to exist under this definition.  So, say defendants, economic damages, like lost yields or profits, do not constitute property damage under the language of the general liability policy in question, citing *Audubon Insurance Company v. Stefancik*, 98 F.Supp.2d 751, 756 (S.D. Miss. 1999).   The *Stefancik* court, defendants note, held that allegations of lost income, lost health benefits and lost debenture investments did not constitute the type of property damage covered by the policies in that case.  The *Stefancik* court stated that these claims were for pecuniary or economic losses, claims which were not covered as property damage, citing *Snug Harbor Ltd. v. Zurich Insurance*, 968 F.2d 538, 542 n.13 (5th Cir. 1992).

Delta & Pine Land responds that the property damage alleged by the Farmer Plaintiffs is "physical injury to tangible property or some loss of use to tangible property not physically injured", as the general liability policy defines property loss,

---

[8]Property damage under the umbrella policy is defined as, "1. [p]hysical injury to or destruction of tangible property which occurs during the policy period, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it. 2. Loss of use of tangible property which has not been physically injured or destroyed provided that such loss of use is caused by an occurrence during the policy period.  The parties agree that the umbrella policy definition of property damage is the same as the general liability policy.

9

emphasizing that (1), courts consistently have held that damages because of lost crop yields constitute property damage, and (2), that the Seed Merchants Endorsement unambiguously provides coverage for loss resulting from "[a]n error in the mechanical mixture of seed. Any diminution in the yield or value of a crop would, according to Delta & Pine Land, fall within the scope of the definition of property damage. Additionally, "crops," argues Delta & Pine Land, are "tangible property." Citing Black's Law Dictionary, Delta & Pine Land submits that "tangible property" is "property that has physical form and characteristics," such as crops.

In the instant case, the NuCotn 33B seed germinated and produced a crop. This crop was not damaged by a physical injury. Nevertheless, Delta & Pine Land contends that property damage occurred because the resulting plants did not perform as expected. While this court accepts that low yield was the outcome of the 1999 growing season, this does not establish that the property, in this case the cotton crop, was damaged by a physical injury.

During oral argument, this court asked counsel for Delta and Pine Land to provide the instance of physical injury. Counsel cited *Aerial Agricultural Service of Montana, Inc. v. Till*, *Underwriter for Lloyd's, London,* 207 F. Supp. 50, 55 (N.D. Miss. 1962), a case involving an Oregon insurance policy which provided coverage for loss "because of injury to or destruction of property" *or "consequential damages"* (emphasis added*)* due to "loss of use" of property. Construing the consequential damages language, language which is not present in the Nationwide policies before this court, the district court concluded that the language of the Oregon policy was ambiguously applied by the insurer if it contended that the negligent seeding of crops

10

with a defective seeding device did not constitute damage to property as defined in the general liability policy.

Delta & Pine Land contends that the instant case and the *Till* case are wholly congruent with one another because they each deal with under-performance and substandard yield of the crops in question.  The claim for property damage asserted in the *Till* case, though, was based on the physical injury inflicted on the crops caused by a defective seeding device.  The claim for coverage was bolstered by the Oregon policy's provision for coverage for consequential damages to property.  Property damage caused by a physical injury was present in *Till* due to the use of a defective seeding device.  This court is not persuaded that *Till* supports a finding of property damage in the instant case.

Another case cited by Delta & Pine Land involved "stunted, undersized" tomato plants that "produced less fruit" than expected, *Ferrell v. West Bend Mutual Insurance Company*, 393 F.3d 786, 795 (8th Cir. 2005).  The tomato farmer used a plastic film manufactured by West Bend which was designed to protect tomato crops from blight. The presence of the film caused physical injury to the tomato crops because of the film's deterioration.  The film deteriorated, leaving the tomato plants exposed to the usual conditions of over-watering, under-watering and blight, the very circumstances the tomato farmer was seeking to avoid.  Property damage to the tomato plants resulted and the Eighth Circuit determined that the insurance policy in question provided coverage.  So, as in *Till*, the *Ferrell* case determined that the crop failure was

11

due to the use of a defective product, a film which failed to protect the tomato plants, thereby causing property damage.

Finally, Delta & Pine Land cites *Shields v. Hiram C. Gardner, Inc.*, 92 Idaho 423, 444 P.2d 38, 42 (Idaho 1968), for the proposition that an insurer "is presumed to know the nature of his insured's business and that the business could be exposed to liability from erroneous mixtures in seed preparation.  Normally, a businessman who takes out such a 'Blanket Liability Policy' with express coverage for 'liability imposed by * * * errors in mechanical mixtures' would expect this sort of transaction to be covered; for it was exactly that contingency (error) which has given rise to the principal action."  So, Delta & Pine Land urges this court to conclude that its mixture of seed in the instant case was erroneous, not intentional, and should be covered by the policies in question.

Still, in the instant case the NuCotn 33B seed germinated and produced a crop. In *Shields*, the seed in question never germinated, leading the court to conclude that it was only reasonable to expect that coverage was afforded against any liability arising out of an error in the chemical mixture of the seed which then  failed to germinate in the fields of the buyer.  Consequently, this court finds *Shields* to be distinguishable from the instant case.  Further, this court finds no property damage as defined by the Nationwide policies upon which to predicate a finding of coverage in this case.

**B.  The Endorsements and Exclusions**

12

The Nationwide defendants refer to the "Seedmen's Modified Liability Coverage Endorsement" in the general liability policy which limits the amount of coverage for losses arising out of failure of the seed to germinate to $100,000.00 per occurrence, and excludes coverage for, "any claim for damage or destruction to crops that have germinated and emerged resulting from the production, distribution, delivery or sale of seed."  *See* Exhibit "B" at MLXB116 5126 AAAAA 0597 (at page 15 of the general liability policy).  The defendants assert that this endorsement speaks directly to the type claims made by the Farmer Plaintiffs in the underlying action.  Clearly, the general liability policy would provide limited coverage for claims based on the failure of the seed to germinate.  This circumstance, however, is not present in the instant case.

The defendants next call attention to the "Damage To Your Product" exclusion which excludes coverage for damage to an insured's own product.  Exclusions such as this provide no coverage to the policyholder against liability for the repair or replacement of its own defective work product.  Coverage is provided for an insured's liability for damages to other property resulting from a defective condition of the product, but not to the insured's product itself.  *See Sarabia v. Aetna Casualty and Surety Co.*, 749 S.W.2d 157, 157-58 (Tex.App.-El Paso 1988);  *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503-04 (Tex.App.-Texarkana 1979).  No such damage to other property is asserted against Delta & Pine Land in this case.  Since the seed in question is Delta & Pine Land's product, as that term is defined in the general liability policy, any damage related to the failure of the seed to perform or warranties or representation as to the quality, fitness or the performance of the cotton seed would be excluded from coverage under the "Your Product Exclusion."  *See* Exhibit "B" at

13

Section I Coverage A at ¶K.  *Meng v. Bituminous Casualty Corporation*, 626 F.Supp. 1237, 1239 (S.D. Miss. 1986) (the "injury to product" exclusion, excludes "property damage to the insured's products arising out of such products).

Finally, the Nationwide defendants submit the Seed Merchants endorsement attached to the general liability policy.  This endorsement adds to the coverage provided by the Commercial General Liability Coverage Part A as follows:  damages because of property damage loss from (1) erroneous delivery of seed which includes (a) failure to deliver seed;  (b) delivery of wrong seed; or (c) delivery of seed at the wrong time or season;  or (2) an error in mechanical mixture of seed.  According Delta & Pine Land, the Farmer Plaintiffs' claims in the underlying action are for erroneous mechanical mixture of the seed.  Even if this can be proven, Delta & Pine Land still is unable to pont to any property damage caused by the mixture.  So, this court is not persuaded that the Seed Merchants endorsement provides coverage for the assertions made by the Farmer Plaintiffs in the underlying action.

## CONCLUSION

Therefore, in light of the foregoing authority and analysis of the policies in question, this court finds that the motion for summary judgment on behalf of Nationwide Agribusiness and Nationwide Mutual asking this court to find no duty to indemnify Delta & Pine Land in the event liability is imposed against it in the underlying state court action  [**Docket No. 38-1**] is well taken and the same is granted. The motion to amend or correct Delta & Pine Land's motion for summary judgment is

14

granted [**Docket No. 56-1**].  The motion to file an amendment to the complaint in this case [**Docket No. 57-1**] is granted.  The motion for summary judgment, as amended, submitted on behalf of Delta & Pine Land seeking this court's declaration that Nationwide Agribusiness and Nationwide Mutual are required to offer indemnity in the event liability is imposed against Delta & Pine Land in the underlying action [**Docket No. 36-1**] is denied.

In accordance with the local rules, this court will enter a Final Judgment.


**SO ORDERED AND ADJUDGED** this the31st day of March, 2006.

s/ HENRY T. WINGATE

CHIEF UNITED STATES DISTRICT JUDGE



CIVIL ACTION NO. 3:03-CV-21 WS
Order Granting and Denying Cross
Motions for Summary Judgment